# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AMADOR S. GONZAGA, | ) | 1:09-cv-1606 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff pro se, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.  42 U.S.C. § 405(g).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] On April 8, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *Roell v. Withrow*, 538 U.S. 580, 590 (2003) (concluding that parties may authorize full-time magistrate judge to preside over civil trial via implied consent); *see also* L.R. 301, 305.

## FACTUAL BACKGROUND

Plaintiff was born in 1959 and previously worked as a mechanic. (Administrative Record ("AR") 34, 136, 151.) On November 16, 2006, Plaintiff filed an application for DIB, alleging disability beginning on November 15, 1999, due to low back injury, depression, and diabetes.[2] (AR 15, 136-43, 150.)

**A.    Medical Evidence**

    **1.    David Reiss, M.D.**

On March 25, 2004, Dr. Reiss, a psychiatrist, opined that Plaintiff was in need of mental health treatment. (Doc. 12-1 at 7.) Dr. Reiss opined that the "mental health treatment should be provided on an industrial basis, if and only if, and for as long as, it is determined that [Plaintiff] continues to suffer significant pain and impairment due to industrially-related physiologically-based orthopedic/neurological factors, and/or it is determined that [Plaintiff] requires ongoing pain management on an industrial basis." (Doc. 12-1 at 7.)

    **2.    Francisco Montalvo, M.D., Ph.D.**

On June 8, 2004, Dr. Montalvo in a psychiatric evaluation of Plaintiff opined that Plaintiff suffered from "major depression – severe." (Doc. 12-1 at 8-13.) Plaintiff "suffers [from] poor concentration, depressed facies, nightly nightmares, and sexual intercourse is down to one time per month from three to four times a week." (Doc. 12-1 at 12.) Further, Plaintiff "suffers [from] depressed mood, anxiety, insomnia, nightmares, [and] is withdrawn and irritable. He suffers [from] loss of libido, and low back pain radiating down his legs." (Doc. 12-1 at 12.)

---

[2] Plaintiff previously alleged disability beginning on November 15, 1999, in an application for DIB filed on May 19, 2003, which the Commissioner denied on September 27, 2004. (AR 64-75.) After the Appeals Council denied Plaintiff's request for review, Plaintiff appealed to this Court (AR 15). *Gonzaga v. Barnhart*, No. CV F 05-0452 OWW LJO (E.D. Cal. filed Apr. 5, 2005). On October 5, 2006, this Court dismissed Plaintiff's appeal, making the September 27, 2004, administrative decision final and binding. Accordingly, the only period at issue in this case is the period between September 27, 2004, and December 31, 2004, the date on which Plaintiff was last insured for DIB.

3.      **Suzanne M. Chaves, M.D.**

Treatment notes in March and April 2005 after Plaintiff was last insured for DIB indicate that Plaintiff refused diabetes education and was not compliant with treatment. (AR 213-14.) On August 4, 2006, Dr. Chaves noted that Plaintiff had not been checking his blood sugar until one month earlier and that Plaintiff was oriented with intact vision.  (AR 328-29.)  Treatment notes also indicated improvement in Plaintiff's condition.  (AR 329.)

4.      **State Agency Physicians**

On January 23, 2007, E.E. Wong, M.D., a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC").[3] (AR 292-99.) Dr. Wong opined that Plaintiff could (1) occasionally lift and/or carry 50 pounds and frequently 25 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. (AR 293.)  Plaintiff could occasionally stoop and crouch and frequently climb, balance, kneel, and crawl.  (AR 294.)   Plaintiff had no manipulative, visual, communicative, or environmental limitations.  (AR 294-95.)  Dr. Wong found no evidence that Plaintiff's condition had materially changed since September 27, 2004.  (AR 299.)

On February 15, 2007, Archimedes R. Garcia, M.D., a state agency psychiatrist, completed a psychiatric review technique form in which Dr. Garcia opined that there was insufficient evidence that Plaintiff suffered from a medically determinable mental impairment.  (AR 300.)

**B.      Administrative Hearing**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 76-

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

3

89, 97-107.)  On October 2, 2008, ALJ Bert C. Hoffman, Jr., held a hearing where Plaintiff testified

and was represented by counsel.  (AR 27-63.)

The ALJ summarized Plaintiff's testimony in his decision as follows:

[Plaintiff] stated he lives with his wife in an upstairs apartment, and goes up and down the stairs slowly.  He said he has a problem driving due to pain in his neck and upper back, and cannot turn his neck.  He said he turns his whole body and both sides are equally bad.  [Plaintiff] testified he learned English in the Philippines starting in elementary school, but does not read English well.  He then said he reads the newspaper, which is inconsistent with an individual who does not read English well.

[Plaintiff] testified that diabetes started a year or two after he injured his back in 1999.  He stated diabetes causes loss of memory, moving slowly, and feeling tired and weak.  He stated that since 2001 he had half good days and half bad days when he had to lie down or be in the recliner half the day.  [Plaintiff] said he has had pain and numbness in his feet since 2001, and in 2004 he was having problems with his feet.  He stated he can be on his feet about an hour, and in 2004 he spent more time off his feet than on.  [Plaintiff] testified that his back pain is sharp and goes to his neck and shoulders and down to his legs.  He stated that in 2003 or 2004 he took medication, rested, and sat in a massage chair to feel better.  He said his shoulders started bothering him after the injury, and his right shoulder is worse than his left.  He said the pain became worse and that it has been hurting badly for about three years.  He stated the pain has been so bad for a year that he sometimes screams.  [Plaintiff] said the doctor has suggested surgery, but [Plaintiff] cannot do it because of money. . . .

[Plaintiff[ testified that he cooks for his wife while she works 12-hour shifts.  He said he washes dishes, walks the dog, does laundry, and shops for food with his wife.  He stated he sometimes goes to the Tachi Palace Casino if his wife gives him money.  He said he was last in the Philippines in 2007.  He said he stayed a couple of months, but his wife came back first.  He stated he went to see family and traveled by jitney [sic] to visit relatives.  He said he was more comfortable in the Philippines.

(AR 21, 34-59.)

## C.   ALJ's Decision

On November 3, 2008, the ALJ issued a decision finding Plaintiff not disabled from

November 15, 1999, the alleged onset date of disability, through December 31, 2004, the date

Plaintiff was last insured (the "date last insured").  (AR 12-24.)  Specifically, the ALJ found that,

through the date last insured, Plaintiff (1) had not engaged in substantial gainful activity since

November 15, 1999; (2) had an impairment or a combination of impairments that is considered

"severe" based on the requirements in the Code of Federal Regulations; (3) did not have an

impairment or combination of impairments that meets or equals one of the impairments set forth in

20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could not perform his past relevant work as a mechanic; but (5) could have performed jobs that existed in significant numbers in the national economy. (AR 18-24.)

The ALJ found that Plaintiff's degenerative disc disease was a severe impairment, but found that Plaintiff's diabetes and depression were not severe. (AR 18.)  The ALJ found that Plaintiff's diabetes worsened after the date last insured but that Plaintiff had refused diabetes education and was not compliant with treatment. (AR 18.)

The ALJ further found that Plaintiff's depression did not have more than a minimal effect on Plaintiff's ability to perform the mental functions of work. (AR 18.)  "[Plaintiff] has not had any psychological individual or group counseling or psychiatric treatment." (AR 18.)  "The evidence indicates [Plaintiff] was not prescribed an anti-depressant until the date last insured for Title II benefits had lapsed. Neither his treatment nor his activities are consistent with a severe impairment." (AR 18 (internal citation omitted).)  In finding Plaintiff's depression not to be severe, the ALJ determined that Plaintiff had (1) no limitation in his activities of daily living; (2) no limitation in social functioning; (3) mild limitation in maintaining concentration, persistence, or pace; and (4) experienced no episodes of decompensation. (AR 18.)

The ALJ found that, through the date last insured, Plaintiff had the RFC to (1) lift and carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk a total of six hours and sit for six hours in an eight-hour workday; and (3) stoop and crouch occasionally. (AR 19.)

The ALJ further found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (AR 21.)  The ALJ gave "very little weight" to Plaintiff's subjective complaints because the objective medical evidence did not support Plaintiff's allegations and because his testimony was inconsistent with the record. (AR 22.)

1   The ALJ also found that the evidence relevant to the unadjudicated period from September

2   27, 2004, to the date of the ALJ's decision supported the presumption of continuing non-disability

3   because the evidence showed that Plaintiff's condition had not materially changed.  (AR 16.)

4       Plaintiff sought review of this decision before the Appeals Council, which denied review on

5   March 30, 2009.  (AR 7-10.)  Therefore, the ALJ's decision became the final decision of the

6   Commissioner.  20 C.F.R. § 404.981.

7   **D.   Plaintiff's Appeal**

8       On September 15, 2009, Plaintiff filed a pro se complaint before this Court seeking review

9   of the ALJ's decision.  Plaintiff contends that the ALJ erred in finding that his diabetes and

10  depression were not severe impairments.  (Doc. 12 at 2.)

11                          <u>**SCOPE OF REVIEW**</u>

12      The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

13  by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

14  1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

15  of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

16  determine whether the Commissioner applied the proper legal standards and whether substantial

17  evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d

18  909, 911 (9th Cir. 2007).

19      "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Ryan v.*

20  *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

21  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

22  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

23  U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

24  evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

25  not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*,

26  504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

27

28                                    6

1

**APPLICABLE LAW**

2        An individual is considered disabled for purposes of disability benefits if he is unable to

3   engage in any substantial, gainful activity by reason of any medically determinable physical or

4   mental impairment that can be expected to result in death or that has lasted, or can be expected to

5   last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

6   1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or

7   impairments must result from anatomical, physiological, or psychological abnormalities that are

8   demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

9   such severity that the claimant is not only unable to do his previous work, but cannot, considering

10  his age, education, and work experience, engage in any other kind of substantial, gainful work that

11  exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

12        The regulations provide that the ALJ must undertake a specific five-step sequential analysis

13  in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the

14  claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

15  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

16  or a combination of impairments significantly limiting him from performing basic work activities.

17  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

18  claimant has a severe impairment or combination of impairments that meets or equals the

19  requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

20  §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

21  has sufficient RFC despite the impairment or various limitations to perform his past work.  *Id.*

22  §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that

23  the claimant can perform other work that exists in significant numbers in the national economy.  *Id.*

24  §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the

25  sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

26  (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

27

28                                                     7

1

**DISCUSSION**

2       Plaintiff contends that substantial evidence does not support the ALJ's decision that

3 Plaintiff's diabetes and depression were not severe impairments.

4 **A.**    **Legal Standards**

5      **1.**      **Severity of Impairments**

6       A plaintiff bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111,

7 1113 (9th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The mere diagnosis of an impairment

8 is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir.

9 1985); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment

10 is insufficient proof of disability).

11       A person is disabled if his impairments are severe and meet the durational requirement of

12 twelve months. 20 C.F.R. §§ 404.1505, 404.1520(a), 416.905, 416.920(a). A severe impairment

13 is one that significantly limits the physical or mental ability to perform basic work activities. *Id.*

14 §§ 404.1520(c), 416.920(c). Examples of basic work activities include carrying out simple

15 instructions, responding appropriately to usual work situations, dealing with changes in a routine

16 work setting, and performing ordinary physical functions like walking and sitting. *Id.*

17 §§ 404.1521(b), 416.921(b).

18       An impairment or combination of impairments is found "not severe" and a finding of "not

19 disabled" is made at step two if the medical evidence establishes only a slight abnormality or a

20 combination of slight abnormalities which would have no more than a minimal effect on an

21 individual's ability to work, even if the individual's age, education, or work experience were

22 specifically considered (i.e., the person's impairments have no more than a minimal effect on his

23 physical or mental abilities to perform basic work activities). Social Security Ruling[4] ("SSR")

24

25       [4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the

26 Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172

27 F.3d 690, 692 n.2 (9th Cir. 1999).

28

85-28.  In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities.  SSR 96-3p.  The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987).

## 2.    Credibility

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**B.      Analysis**

In this case, the ALJ found that Plaintiff's diabetes was not a severe impairment during the relevant period because Plaintiff's diabetes only worsened after the date last insured; in any event, Plaintiff had refused diabetes education and was not compliant with treatment. (AR 18.) The ALJ further gave "very little weight" to Plaintiff's subjective complaints because the objective medical evidence did not support Plaintiff's allegations and because his testimony was inconsistent with the record. (AR 22.)

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). In *Tommasetti*, for example, the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects." 533 F.3d at 1039.

However, "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment ." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that claimant's minimal treatment regime was not proper basis for finding him not credible; claimant did not take other pain medication besides Ibuprofen because of adverse side effects); *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *cf. Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995) ( "It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984))).

1   According to Plaintiff, his wife's insurance would not cover treatment for his diabetes, and

2   he could not afford to pay out of pocket. (Doc. 12 at 2.)  Even if true, Plaintiff does not dispute that

3   in refusing prescribed diabetes education he was not compliant with his treatment.  An "unexplained,

4   or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can

5   cast doubt on a claimant's sincerity. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In addition,

6   this Court found on Plaintiff's previous appeal that, "[i]n the absence of evidence that plaintiff's

7   diabetes cannot be controlled despite his efforts to follow a prescribed program, plaintiff fails to

8   demonstrate an impairment from diabetes or that the ALJ erred to evaluate plaintiff's diabetes."

9   *Gonzaga v. Barnhart*, No. CV F 05-0452 OWW LJO, slip op. at 22 (E.D. Cal. Sept. 12, 2006).

10   Plaintiff maintains that, contrary to the ALJ's finding, his depression was a severe

11   impairment. (Doc. 12 at 2.)  The ALJ found, however, that neither Plaintiff's treatment nor his

12   activities were consistent with a severe mental impairment. (AR 18.)  Moreover, Plaintiff does not

13   dispute the ALJ's finding that, during the relevant period in this case, he "has not had any

14   psychological individual or group counseling or psychiatric treatment." (AR 18.)

15   Plaintiff points to evidence adduced in Plaintiff's previous appeal of Dr. Montalvo's opinion

16   that Plaintiff suffered from "major depression – severe."  As discussed above, the mere diagnosis

17   of an impairment is not sufficient to sustain a finding of disability.  Furthermore, Dr. Montalvo's

18   June 2004 opinion is outside the relevant period in this case.  In any event, this Court found on

19   Plaintiff's previous appeal that the Appeals Council had addressed Dr. Montalvo's assessment and

20   properly rejected it because Dr. Montalvo's treating records did not support his opinion regarding

21   Plaintiff's work restriction. *Gonzaga*, slip op. at 23 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751

22   (9th Cir. 1989) (treating physician's opinion, whether or not it is contradicted, may be rejected if

23   opinion is brief and conclusory in form with little in way of clinical findings to support its

24   conclusion)).  The ALJ and Appeals Council had also noted the absence of evidence that Plaintiff's

25   depression had met the twelve-month durational requirement. *Id.* at 22.  Plaintiff does not otherwise

26   point to any evidence demonstrating that the ALJ erred in finding that Plaintiff's depression did not

27

28                                                11

1 | have more than a minimal effect on Plaintiff's ability to perform the mental functions of work.

2 | Moreover, Plaintiff disputes neither the ALJ's determination of Plaintiff's credibility nor the ALJ's

3 | reasons to discount Plaintiff's testimony.

4 |      The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in

5 | testimony. *Magallanes*, 881 F.2d at 751. It is the role of the trier of fact, not this Court, to resolve

6 | conflicts in evidence. *Perales*, 402 U.S. at 400. The Court has a limited role in determining whether

7 | the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for

8 | that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42

9 | U.S.C. § 405(g). For the foregoing reasons, therefore, the Court finds that substantial evidence

10 | supports the ALJ's determination that Plaintiff's diabetes and depression were not severe

11 | impairments during the relevant period in this case.

12 | **<u>CONCLUSION</u>**

13 |      Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

14 | evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court

15 | DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

16 | The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,

17 | Commissioner of Social Security, and against Plaintiff Amador S. Gonzaga.

18 |

19 | IT IS SO ORDERED.

20 | **Dated:**   **February 23, 2011**        **/s/ Sheila K. Oberto**

21 |                        UNITED STATES MAGISTRATE JUDGE